IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONICA K. EVERSON,                                         OPINION and ORDER

                            Plaintiff,

                                                           08-cv-618-bbc

             v.

CITY OF MADISON
and ROBERT D'ANGELO,
in his individual capacity,[1]

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    Plaintiff Monica Everson is suing defendants City of Madison and Robert D'Angelo
for alleged sexual harassment by D'Angelo that occurred between 1991 and 2005 while she
was working under his supervision at the Madison Civic Center and, later, the Overture
Center for the Arts in Madison, Wisconsin.  She brings her claims under Title VII of the
Civil Rights Act (against the city) and 42 U.S.C. § 1983 and the equal protection clause
(against both defendants).  Both defendants have filed motions for summary judgment,

---

[1]  Plaintiff's complaint lists "John and Jane Doe, I-V" as defendants.  I have omitted
these Does from the caption because the deadline for amending the pleadings has long since
passed and plaintiff has not requested additional time to identify the Does or indicated that
she intends to do so.

1

which are now ripe for review.

The city's motion will be granted with respect to plaintiff's claim that the city violated her right to equal protection of the laws because plaintiff failed to develop any argument that the city had a policy of promoting or permitting sexual harassment, which is the standard for municipal liability under § 1983.  Phelan v. Cook County, 463 F.3d 773, 788-89 (7th Cir. 2006).  See also Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (failure to oppose argument operates as waiver).  In her brief, plaintiff seems to assume that the standard for municipal liability is the same under Title VII and § 1983,  but that is not correct.  Although "the standard of proof *as to what constitutes sexual harassment* under § 1983 is essentially the same as that under Title VII," Murray v. Chicago Transit Authority,  252 F.3d 880, 887 (7th Cir. 2001) (emphasis added), the basis for employer liability is quite different.  Under Title VII an employer may be held liable using traditional agency principles, but under § 1983 the plaintiff must show that the employer's own unconstitutional actions caused the plaintiff's harm.   Phelan, 463 F.3d 782-86, 788-90 (analyzing two claims separately and using different standards).

Defendants' motions for summary judgment will be denied in all other respects. Their primary argument is that plaintiff's claim is untimely, but they have failed to  properly apply National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002), in which the Supreme Court held that employees subjected to sexual harassment may rely on older

incidents to establish liability so long as the older incidents are related to at least one incident that occurred within the limitations period. Because plaintiff alleges that defendant D'Angelo continued to subject her to harassment through 2005 and it is undisputed that the incidents in 2005 fall within the statute of limitations, I conclude that the older incidents may be considered as well.

Also before the court is plaintiff's motion to "strike" several of the city's proposed findings of fact. That motion will be denied as moot because it was not necessary to consider any of these facts in order to resolve the summary judgment motions.


OPINION

To prevail on a claim for sexual harassment under Title VII or § 1983, a plaintiff must prove that she was subjected to unwelcome conduct because of her sex and that the harassment was sufficiently severe or pervasive as to alter the conditions of her employment. Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007); Huff v. Sheahan, 493 F.3d 893, 903-04 (7th Cir. 2007). Neither defendant denies that plaintiff has adduced sufficient evidence to prove that D'Angelo's treatment of her in the 1990s created a "hostile work environment," the term courts use to describe harassment that violates federal law. E.g., Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986). This is a wise concession. It is unnecessary to recount all the acts that plaintiff alleges because it is clear that even a

3

fraction of them would be sufficient to give rise to a federal claim, but I will provide a sampling of the alleged harassment:

- soon after plaintiff began working for the city, defendant D'Angelo followed plaintiff into an elevator, pressed himself against her, pushed her to the wall and grabbed the sides of her breasts; D'Angelo did the same thing on many instances when he was alone in the elevator with plaintiff;

- on many occasions, D'Angelo would take plaintiff's hand and place it on his genitals over his clothes, trying to get plaintiff to massage his crotch;

- D'Angelo unzipped his pants and held his penis in front of her, saying "What do you think?  Don't you like it?";

- on multiple occasions, when plaintiff asked D'Angelo to sign a paper, he would put the paper down the front of his pants and say, "Come get it";

- D'Angelo made comments to plaintiff such as, "I know you want to fuck me," "[I]f you fuck me, you'd never able to be with another man your whole life, I'm so good";

- D'Angelo told plaintiff that he would like to "do her with a banana" and that she would have to give him "10 blow jobs" if she wanted a purple geode that was on his desk;

- D'Angelo called plaintiff a "cunt," a "bitch" and a "dumb blonde";

4

• D'Angelo asked plaintiff to participate in a "threesome" with another woman. Overall, plaintiff estimates that defendant D'Angelo groped, fondled or otherwise inappropriately touched her more than 500 times over the course of her employment.

The gist of the city's argument is that plaintiff missed the boat on suing for any harassment that occurred because the statute of limitations has run on the vast majority of the alleged harassment and the incidents that occurred within the limitations period are not sufficiently severe or pervasive to constitute sex discrimination under the Constitution or Title VII. (Defendant D'Angelo argues in his motion that the court should not consider incidents before the limitations period, but he does not address the question whether the more recent incidents are sufficient to state a claim on their own.) Plaintiff filed a charge with the Equal Employment Opportunities Commission on October 25, 2005; she filed this lawsuit on October 16, 2008. Ordinarily, a plaintiff may not maintain a lawsuit under Title VII for any discriminatory acts that occurred more than 300 days before she filed the charge. 42 U.S.C. § 2000e-5(e)(1); in Wisconsin, claims under § 1983 must be brought within six years of the date she has notice of her injury. Malone v. Corrections Corp. of America, 553 F.3d 540, 542 (7th Cir. 2009).

According to the city, only two incidents of alleged harassment occurred less than six years before October 16, 2008 or less than 300 days before October 25, 2005. First, plaintiff alleges that, in April 2005, defendant D'Angelo asked whether a zipper on her shirt

5

"zipped all the way down."  He then reached over and zipped her shirt down to the point that it exposed her brassiere until plaintiff stopped him.  Second, also in 2005, plaintiff alleges that D'Angelo attempted to grab her crotch, coming within one inch of it before he stopped and went back to his office.

The city may be correct that these two incidents are not sufficient to state a claim for sex discrimination by themselves.  Although one might think that any nonconsensual sexual touching could give rise to a claim, the Court of Appeals for the Seventh Circuit has declined to adopt a bright line rule, instead looking at the facts of each case.  The court has said that "touching . . .  increases the severity of the situation," Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001), and that "unwanted physical contact falls on the more severe side," Magyar v. Saint Joseph Regional Medical Center, 544 F.3d 766, 771-72 (7th Cir. 2008), but it has also said that "[t]here are some forms of physical contact which, although unwelcome and uncomfortable for the person touched . . . typically will not be severe enough to be actionable in and of themselves." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000).

A review of the cases shows that the only thing that may be said with certainty is that a fine line exists between touching that is sufficiently severe and touching that does not constitute sex discrimination as a matter of law.  Compare  Patton v. Keystone RV Co., 455 F.3d 812, 816-17 (7th Cir. 2006) (allegation that harasser's "hand was under  [plaintiff's]

6

shorts, on her inner thigh, and touching her underwear" was sufficiently severe); <u>Worth</u>, 276 F.3d at 268 (touching of plaintiff's "breast near the nipple for several seconds is severe enough"); <u>Hostetler</u>, 218 F.3d at 807-09 (forced kissing and attempt to remove plaintiff's bra sufficiently severe); <u>Doe v. City of Belleville</u>, 119 F.3d 563, 582 (7th Cir. 1997) (being grabbed by testicles is sufficiently severe), <u>with</u> <u>McPherson v. City of Waukegan</u>, 379 F.3d 430, 434, 439 (7th Cir. 2004) (pulling back plaintiff's shirt once to see type of bra she was wearing insufficient); <u>Hilt-Dyson v. City of Chicago</u>, 282 F.3d 456, 463-64 (7th Cir. 2002) (two instances of back rubbing not sufficiently severe); <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 361-62 (7th Cir. 1998) ("four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks" not sufficiently severe or pervasive); <u>Koelsch v. Beltone Electronics Corp.</u>, 46 F.3d 705, 706-08 (7th Cir. 1995) (one instance where supervisor rubbed foot against plaintiff's leg and another where he grabbed plaintiff's buttocks not sufficiently severe); <u>Weiss v. Coca-Cola Bottling Co.</u>, 990 F.2d 333, 337 (7th Cir. 1993) (assuming that two attempts by a supervisor to kiss plaintiff were insufficient); <u>Saxton v. AT&T</u>, 10 F.3d 526, 528 (7th Cir. 1993) (rubbing hand along plaintiff's upper thigh and kissing her not sufficient).

Although the two incidents in 2005 might seem more similar to the cases in which the court threw out the claim, one could argue that D'Angelo's harassment was more objectively severe in context because of his allegedly long history of harassment. That is, a

7

reasonable person in plaintiff's shoes might consider even individual incidents to be "invasive, humiliating, and threatening," Hostetler, 218 F.3d at 809, because D'Angelo's alleged past acts suggest strongly that his intent was to have such an effect. Perhaps a truly isolated incident in which a supervisor tried to unzip an employer's shirt would not meet the threshold for severity, but in plaintiff's case, in which she alleges that D'Angelo imposed a reign of terror over her for many years, a much stronger argument exists that any malevolent touch could cause great humiliation (as a reminder of everything she has endured thus far) and great fear (of what violation might come next).

I need not determine conclusively whether the 2005 incidents could sustain a claim on their own because I agree with plaintiff that she may recover for the older instances of harassment under the continuing violation doctrine. Under that doctrine, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). The Court adopted this approach because it concluded that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at 117 (citing 42 U.S.C. § 2000e-5(e)(1)). In other words, because the "unlawful employment practice" is not complete until the last act of harassment concludes, older

8

incidents may be considered timely because they are part the same "practice" as the newer incidents.  Although <u>Morgan</u> was a Title VII case, the court of appeals has concluded that its holding applies equally to cases brought under § 1983.  <u>Hildebrandt v. Illinois Dept. of Natural Resources</u>, 347 F.3d 1014, 1036 (7th Cir. 2003).  In this case, because the alleged incidents in 2005 "contribut[ed] to th[e] hostile environment," plaintiff may rely on "behavior alleged outside the statutory time period" to establish liability.

Defendant D'Angelo does not address the continuing violation doctrine in his opening brief.  Although the city acknowledges the doctrine, it cites <u>Garrison v. Burke</u>, 165 F.3d 565, 569-70 (7th Cir. 1999), for the proposition that the doctrine applies "only if a reasonable person in the position of the plaintiff would not have known, at the time the untimely acts occurred, that she had a claim; rather, she could only tell by hindsight that the untimely acts represented the early stages of harassment."

The city may be correct that plaintiff's claim cannot survive the standard in <u>Garrison</u>, but this matters little because the version of the continuing violation doctrine espoused in <u>Garrison</u> is no longer good law.  In fact, the Court explicitly overruled <u>Galloway v. General Motors Parts Operations</u>, 78 F.3d 1164 (7th Cir. 1996), the case <u>Garrison</u> cites for its standard.  <u>Morgan</u>, 536 U.S. at 116-117 n.11.  The Court could not have been clearer:

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred

outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

Id. at 117-18.

The city does not acknowledge Morgan's effect on Garrison or even cite Morgan in its opening brief.  Even after plaintiff relied on Morgan in her brief in opposition, the city did not withdraw its argument under Garrison.  It may be that the city was confused by more recent cases that seem to echo the pre-Morgan approach.  For example, in Lewis v. City of Chicago, 528 F.3d 488, 493 (7th Cir. 2008), the court seemed to explain the continuing violation doctrine under a rationale similar to the one in Garrison and Galloway:

The doctrine of continuing violation allows you to delay suing until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based. Despite its name, it is a doctrine about cumulative rather than continuing violation. A typical case is workplace harassment on grounds of sex. The first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior. And then the entire series is actionable. If each harassing act had to be considered in isolation, there might be no actionable claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered unlawful harassment.

10

Id. at 493 (citing Galloway, among other cases).  Similarly, in his reply brief defendant D'Angelo cites Savory v. Lyons, 469 F.3d 667, 672 -673 (7th Cir. 2006), in which the court stated it "has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events."

Lewis and Savory seem to track the reasoning in Galloway and Garrison, which is that a plaintiff may not rely on the continuing violation doctrine if she should have known earlier that "a series of acts by a prospective defendant [had] blossom[ed] into a wrongful injury." This is somewhat confusing in light of Morgan, in which the Supreme Court made it clear that it does not matter whether the plaintiff could have brought a claim much earlier. However, the tension is more apparent than real because neither Lewis nor Savory involved a harassment claim.  Savory was about a decision whether to release evidence.  Although the court in Lewis used sexual harassment in an illustration of the continuing violation doctrine, the facts of the case involved a disparate impact claim.  Application of the continuing violation doctrine in contexts other than hostile work environment claims is not necessarily instructive because the doctrine is not applied the same way with respect to different claims, as Justice O'Connor noted in her dissent in Morgan, 536 U.S. at 127-28 (O'Connor, J., concurring in part and dissenting in part).  To the extent Lewis suggests that Galloway and

11

Garrison remain good law, I need not follow this view because it is dicta and directly contrary to Supreme Court precedent.  Klingman v. Levinson, 114 F.3d 620, 628 (7th Cir. 1997).

The city makes two other arguments related to the continuing violation doctrine, neither of which is sound.  First, the city says that the later incidents are not part of the same "employment practice" as the earlier incidents because defendant D'Angelo stopped harassing plaintiff during the years that he was dating a friend of plaintiff's from 2000 to 2003.  In other words, defendant's argument is that any lull in the harassment ends the "unlawful employment practice" so that any new harassment that occurs later becomes a separate employment practice.  Second, the city says D'Angelo's harassment over the years could not be part of the same employment practice because various individuals up the chain of command changed during the relevant time period, such as plaintiff's immediate supervisors, the director of human resources and the mayor.

One problem with the city's first argument is that plaintiff denied in her deposition that defendant D'Angelo stopped harassing her at any time; she said only that D'Angelo stopped his *physical* harassment of her "for the first couple months" of the relationship.  Dkt. #101, at 74.  Although the city says that plaintiff's deposition testimony is inconsistent with statements that she made before she filed this lawsuit, that is a matter to be resolved on cross examination at trial, not on a motion for summary judgment.  E.g., Gullick v. Ott, 517 F.

12

Supp. 2d 1063, 1075 (W.D. Wis. 2007) ("sham affidavit" rule does not apply to depositions).  In any event, even if there was a break of many months in the harassment, this is another issue that does not bar relief under Morgan.  The Court discussed a hypothetical situation regarding harassment that occurs over the course of 401 days:

> Acts contribute to a hostile environment on days 1-100 and on day 401, but there are no acts between days 101-400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? . . . [I]t does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole.

Morgan, 536 U.S. at 118.  So long as the later incidents are related to the earlier ones, a gap in time between the incidents does not defeat the claim.  Id.  Neither defendant suggests that the alleged acts of harassment in 2005 are unrelated to the earlier incidents.

The city's second argument (that changes in supervisors mean that D'Angelo's harassment was more than one unlawful employment practice) makes little sense.  The city does not develop the argument; it simply cites Bright v. Hill's Pet Nutrition, Inc., 510 F.3d 766, 768 (7th Cir. 2007), in which the court stated, "When a single managerial staff or chain of command decides to permit the men in the workplace to make life miserable for the women, that is a single unlawful practice whether or not a particular woman moves from one team to another within the plant."  See also Isaacs v. Hill's Pet Nutrition, Inc., 485 F.3d 383, 386 (7th Cir. 2007) ("As long as the employee remains within a single chain of command, however, and the same people control how the employer addresses problems in the

13

workplace, there is only one employment practice, and all events may be considered.")

Bright and Isaacs do not support the city's position because defendant D'Angelo *was* always under the same chain of command. Although the individuals holding particular supervisory positions may have changed, the city does not explain why this matters when the offices exercising authority over D'Angelo stayed the same.  In any event, Bright and Isaacs do not stand for the proposition that each new supervisor creates a distinct unlawful employment practice for the purpose of the continuing violation doctrine.   Rather, the question in those cases was whether harassment by *different coworkers* could constitute one employment practice.  The court concluded that the differences did not matter so long as all of the harassing employees were under common control.  It is difficult to see how these cases have any application when the plaintiff is alleging harassment by the same person.  In this case, there is no need to find a common link connecting each of the incidents because D'Angelo himself is the link.

I can briefly address defendants' remaining arguments.   The city has forfeited arguments regarding laches and its affirmative defense under Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), because it raised those arguments for the first time in its reply brief.  Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) ("[The district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.")

14

Defendant D'Angelo's only other argument is that plaintiff released him from liability when she settled her claim against the Madison Cultural Arts District. The settlement agreement includes a line stating that plaintiff "does hereby release and discharge the Madison Cultural Arts District ('MCAD') and all of its officers, past and present Executive Directors (including Robert D'Angelo, only in his capacity as an agent, officer, employee, or director of MCAD as alleged by Everson in her complaint)." Dkt. #100-5.

Defendant D'Angelo argues that the phrase in parentheses bars plaintiff from suing him under § 1983, but he ignores the limitation on the release as it relates to D'Angelo, which is that it releases him "*only* in his capacity as an agent" of the district. The most natural reading of the phrase is that plaintiff and the district included it to insure that plaintiff would not sue any of the district's employees in their official capacity as a way of circumventing the settlement agreement with the district. Kentucky v. Graham, 473 U.S. 159 (1985) (suing government actor in his official capacity "represent[s] only another way of pleading an action against an entity of which an officer is an agent"). D'Angelo provides no other purpose for the reference in the release to his "capacity as an agent, officer, employee, or director" of the district. Sonday v. Dave Kohel Agency, Inc., 2006 WI 92, ¶ 21, 293 Wis. 2d 458, 471, 718 N.W.2d 631, 637 ("We interpret a contract to give reasonable meaning to each provision and without rendering any portion superfluous."). If plaintiff intended to release D'Angelo from liability in all respects, it would make no sense

15

to do so in the context of a parenthetical statement in a contract to which D'Angelo was not even a party.  State ex rel. Journal/Sentinel, Inc. v. Pleva, 155 Wis. 2d 704, 711, 456 N.W.2d 359, 362 (1990) ("[T]he cornerstone of contract construction is to ascertain the true intentions of the parties as expressed by the contractual language. This court has said that the purpose of judicial construction is to determine what the parties contracted to do as evidenced by the language they saw fit to use."); Huntoon v. Capozza, 57 Wis. 2d 447, 461-462, 204 N.W.2d 649, 657 (1973) ("[I]mportant contractual provisions are not ordinarily left to implication.").


ORDER

IT IS ORDERED that

1.  The complaint is DISMISSED as to defendants "John and Jane Doe, I-V."

2.  Plaintiff Monica Everson's motion to "strike" several of defendant City of Madison's proposed findings of fact, dkt. #123, is DENIED as moot.

3.  Defendant City of Madison's motion for summary judgment, dkt. #95, is GRANTED with respect to plaintiff's claim under 42 U.S.C. § 1983 that the city violated her right to equal protection of the laws.  The complaint is DISMISSED as to that claim. The city's motion is DENIED with respect to plaintiff's claim that the city violated her rights under Title VII.

16

4.   Defendant Robert D'Angelo's motion for summary judgment, dkt. #90, is

DENIED.

Entered this 10th day of December, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge